Citation Nr: 1554529 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 11-25 670 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for service-connected posttraumatic stress disorder (PTSD) from November 14, 2007 to June 8, 2015, and in excess of 50 percent since June 9, 2015.

2. Entitlement to a total disability rating based upon individual unemployability (TDIU). 


ATTORNEY FOR THE BOARD

A. Hodzic, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had active military service from January 1966 to January 1968 in the United States Army, which included service in the Republic of Vietnam. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision of the Department of Veteran's Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, which granted entitlement to service connection for PTSD and assigned an initial rating of 30 percent for this disability. The Veteran appealed the assigned rating in this decision and the matter is now before the Board. 

Moreover, the Veteran filed an application for a TDIU in November 2010. The RO incorporated consideration of entitlement to a TDIU in its adjudication of his PTSD claim prior to certifying this case to the Board because the Veteran raised a claim for a TDIU due to PTSD symptoms during the appeal period. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 

This case was previously before the Board in August 2012, at which time the Board remanded the case for additional evidentiary and procedural development. As discussed in more detail below, the Board finds that there has been substantial compliance with its remand orders and that it may therefore proceed with a determination of the issues on appeal. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. After affording the Veteran the benefit of the doubt, throughout the entire appeal period, his PTSD symptoms have included intrusive thoughts, traumatic nightmares, distress, avoidance of conversations about his military service, estrangement and detachment from others, hypervigilance, problems with memory and concentration, exaggerated startle response, chronic sleep impairment, often nonlinear speech, limited insight and judgement, dysthymic and agitated mood, depressed and anxious feelings, and difficulty in establishing and maintaining effective work and social relationships resulting in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and mood; however, PTSD symptoms have not resulted in total occupational and social impairment. 

2. After affording him the benefit of the doubt, the Veteran was unable to secure or follow gainful employment as a result of his service-connected disabilities. 


CONCLUSIONS OF LAW

1. The criteria for a rating of 70 percent, but not higher, for PTSD have been met throughout the entire rating period. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.130, Diagnostic Code (DC) 9411 (2015).

2. The criteria for entitlement to a TDIU have been met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.18, 4.19, 4.25 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Increased Rating for PTSD

The Veteran is seeking an increased rating of his PTSD disability, which was initially rated as 30 percent disabling, effective November 14, 2007. 

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3 (2015). If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. However, the evaluation of the same disability under various diagnoses, known as pyramiding, is to be avoided. 38 C.F.R. § 4.14.

Where, as here, entitlement to compensation has already been established and an increase in the initial disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, staged ratings are appropriate for an increased rating claim if the factual findings show distinct time periods where the service-connected disability exhibited symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The following discussion addresses the Veteran's level of disability from the time that he was granted service connection for PTSD on November 14, 2007. Francisco, 7 Vet. App. 55; Hart, 21 Vet. App. 505. 

PTSD is evaluated under the General Rating Formula for Mental Disorders (General Rating Formula). See 38 C.F.R. § 4.130, DC 9411. In a February 2010 2012 rating decision, the Veteran was awarded service connection for PTSD, and granted an initial evaluation of 30 percent effective November 14, 2007. Moreover, in a June 2015 rating decision, the RO increased the rating for this disability to 50 percent effective June 9, 2015, the date of the Veteran's latest VA examination. 

Under the General Rating Formula, a 10 percent evaluation is provided for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication.

A 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). Id. 

A 50 percent rating is given for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); or, the inability to establish and maintain effective relationships. Id.

A 100 percent rating is provided for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or, memory loss for the names of close relatives, own occupation, or own name. Id.

The claims file includes numerous VA and private treatment records in which medical professionals confirmed the Veteran's PTSD diagnosis using the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV) and assigned Global Assessment of Functioning (GAF) scores. GAF is a scale used by mental health professional and reflects psychological, social, and occupational functioning on a hypothetical continuum of mental health illness and is relevant in evaluating mental disability. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DSM-IV). The Board has considered the GAF scores as one component of the overall disability picture in evaluating the level of disability for his PTSD symptoms. Moreover, the newer Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-V) has now been officially released, and VA regulations have been changed to reflect this fact. See 38 C.F.R. § 4.130 (2015). However, the Veteran has psychiatric diagnoses under the DSM-IV as well as diagnoses under the DSM-V. Thus, the Board shall consider his appeal in light of both the DSM-IV and the DSM-V criteria.

GAF scores between 60 and 51 indicate moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV.

GAF scores between 50 and 41 indicate serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

GAF scores between 40 and 31 indicate some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing in school). Id. 

The VA Secretary, acting within his authority to "adopt and apply a schedule of ratings," chose to create one general rating formula for mental disorders. 38 U.S.C. § 1155; see 38 U.S.C. § 501 (West 2014); 38 C.F.R. § 4.130. By establishing one general formula to be used in rating more than 30 mental disorders, there can be no doubt that the Secretary anticipated that any list of symptoms justifying a particular rating would in many situations be either under- or over-inclusive. The Secretary's use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptoms contemplated for each rating, in addition to permitting consideration of other symptoms, particular to each veteran and disorder, and the effect of those symptoms on the claimant's social and work situation. Mauerhan v. Principi, 16 Vet. App. 436, 443 (2002) (holding that "the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, the rating specialist is to consider all symptoms of a claimant's condition that affect the level of occupational and social impairment").

In a December 2008 letter, a private medical professional discussed the findings of her November 2008 psychological evaluation of the Veteran. After describing his in-service stressors, the private psychologist discussed the Veteran's experiencing of numerous PTSD symptoms since service, including intrusive thoughts, traumatic nightmares, distress at exposure to triggers that remind him of past trauma, avoidance of conversations about his military service, estrangement and detachment from others, hypervigilance, problems with memory and concentration, and exaggerated startle response. The Veteran also reported that he has severe sleep problems, night sweats, and nightmares, and his wife reported that he often kicks out in his sleep. He further stated that the sight or smell of blood triggers memories related to his in-service stressor, and that he has intrusive thoughts about being in combat. The medical professional noted that he avoided watching war movies and reading war stories, that he does not talk about his war experiences with anyone, and that he tries to avoid hearing news about war in Iraq because it triggers memories of his time in Vietnam. He relayed that prior to his military service, he was more social but when he returned from Vietnam, his friends told him he was different. He described feeling distant from people, avoiding crowds, and being unable to tolerate having anyone be behind him. He stated that he is easily startled by loud noises, and he reported problems with memory and concentration. 

His mental status examination showed that he was cooperative. His dress was normal, but his mood was dysthymic and agitated. His affect was restricted and his narrative was not always linear. His judgment and insight were limited, but he did not have any current suicidal or homicidal ideation. The mental health professional diagnosed him with severe, chronic PTSD and assigned a GAF score of 38. 

This private psychologist submitted another letter in May 2009 in which she stated that she initially saw the Veteran in November 2008 and that he had sought continuous treatment with her since that time. She noted that he continued to experience symptoms consistent with a diagnosis of PTSD, and that he still had sleep problems where he would wake often and be unable to return to sleep. He had jumpy and anxious feelings, and his startle reflex was pronounced. She also noted that he demonstrated avoidance symptoms and problems with concentration and memory, and that his social contacts were limited. 

In connection with his claim for service connection for PTSD, the Veteran was afforded a VA examination in November 2009 during which the examiner reviewed his claims file and pertinent records, performed an in-person mental health evaluation, and took down his self-reported symptoms and history. During this evaluation, the Veteran reported being incarcerated for approximately 17 years for a nonviolent drug offense from 1990 to October 2007. The examiner noted that he had been married for 38 years and that he has a good relationship with his wife. Moreover, the examiner noted that he worked six days per weeks, attended church and gospel shows, and watched football as his leisure activities and pursuits. 

The Veteran reported that he slept approximately four hours each night, then would wake up for one hour, and then return to sleep for approximately three hours. The examiner noted that sleep impairment did not interfere with his daily activities. He again reported nightmares, which occurred approximately two to three times per month, and being on guard. The examiner noted that he worked full-time as an automobile mechanic for his brother's business. 

Upon examination, he appeared well-groomed, and did not have any psychomotor agitation or retardation noted. His speech was normal in rate, volume, rhythm, tone and amount. His attitude was cooperative, his mood was good, and his affect and attention were normal. He was oriented in space, time, and place, and his thought process was organized and goal-oriented. He did not exhibit signs of suicide or homicide ideation, paranoia or delusions, or auditory verbal hallucinations. Moreover, his judgement was intact, his intelligence was average, and his insight was fair. The examiner noted that he did not have any problems with activities of daily living, and that his memory was normal. Following the examination, the examiner was unable to state whether he had PTSD; however, the examiner diagnosed him with anxiety disorder not otherwise specified (NOS), to rule out malingering, and assigned a GAF score of 60. 

The Veteran was afforded a follow-up examination for his PTSD symptoms in December 2009. Upon examination, he was alert and cooperative. His grooming was intact, his speech was coherent and of normal rate, volume, and rhythm. His affect was constricted, and his underlying mood was anxious and tense. The Veteran reported that his mood has a negative impact on his sleep, which the examiner noted was insomnia. There was no evidence of a thought disorder or perceptual difficulties, and he denied having a history of or current suicidal or homicidal ideation or intent. 

The examiner noted that the Veteran graduated from a four-year university in 1974. He was employed as an automobile mechanic for his brother at the time of the examination. He reported difficulty completing projects and indicated that it takes him twice as long to complete most tasks than was normal. 

The Veteran's concentration problems and difficulty falling and staying asleep were severe symptoms of his PTSD. His moderate to severe symptoms were: intrusive recollections of the trauma, nightmares of trauma, avoidance of thought and feelings, avoidance of situations, anhedonia or diminished interest in activities, and social isolation. His moderate symptoms were: psychological reactions to stressors and exaggerated startle response. His mild symptoms were: flashbacks, psychological response to triggers, problems recalling aspects of the trauma, emotional numbing, irritability and anger, and being hyperactive or on guard. The examiner noted that the collectively, these symptoms are of at least moderate severity, and that the Veteran reported that these experiences occur either on a daily or weekly basis. 

The examiner explained that individuals with similar clinical profiles reported a moderate level of psychological distress and were viewed by others as depressed, anxious and tense, irritable, and impatient. Such individuals do not enjoy life, tended to brood/ruminate and worry, have concentration problems, often feel helpless, are introverted, are easily embarrassed/hurt, are passive-dependent, have many sleep difficulties, have low energy, and are at risk for having suicidal thoughts and/or attempts. 

After reviewing his records, the interview information, and formal test results, this examiner diagnosed him with chronic PTSD that was of moderate severity and assigned a GAF score of 51. 

In his November 2010 notice of disagreement with the assigned rating for his PTSD disability, the Veteran contended that his PTSD signs and symptoms warrant a rating of either 70 percent or 100 percent due to their severity. In particular, he pointed out that his private psychologist, who had been treating him over two years by that point, indicated that his symptoms caused major impairment in his life, including work. Additionally, in a January 2015 statement in support of his claim, he endorsed symptoms of nightmares and headaches due to his PTSD. 

In an August 2011 letter, the Veteran's private psychologist restated her results from a June 2011 evaluation for his PTSD signs and symptoms. She noted that these symptoms continue to cause significant disruptions in all areas of his life, including sleep problems and nightmares. She stated that he gets up during the night to check the locks on his doors and windows. Moreover, he has additional intrusive thoughts of his time in Vietnam. She stated that he feels most comfortable when he is at home alone, and that he is easily irritated, which is another reason that he does not want to be around people. She also noted that he has additional memory problems, and that she considers him to be totally and permanently disabled. She again diagnosed him with severe, chronic PTSD and assigned a GAF score of 38. 

In another letter, dated September 2012, from this private psychologist, she recounted the results of her recent evaluation of the Veteran's PTSD. She again noted that his symptoms were chronic and severe, and she assigned a GAF of 38. She stated that he is hypervigilant, dislikes crowds, and sits with his back to the wall in a public place. The Veteran reported that he had not held another job since 1974, apart from working for his brother at his own pace. He commented that although he was not able to function successfully in a regular work environment, he is unable to sit at home because when he has nothing to occupy his mind he has intrusive thoughts of his time in Vietnam. He stated that these thoughts depress him and leave him feeling anxious. To keep his mind occupied and his stress level manageable, he works part time at his brother's autobody shop where he can determine his own hours, work by himself, and work at his own pace. 

He reported that his sleep problems had gotten worse in the last several years, with more frequent nightmares. His wife tells him that he kicks in his sleep, and that he's restless. He recounted an incident where he kicked the wall in his sleep so hard that he injured his foot. He again stated that he avoids watching war movie and reading war stories, and he contended that he had increased thoughts of Vietnam. He also endorsed symptoms of irritation, impatience with others, and a low tolerance of other people's opinions and mistakes. Moreover, he endorsed being easily startled by loud noises, trouble focusing, and memory problems, which included failing to remember the names of relatives on some days. 

His mental status examination revealed that he was cooperative and normally dressed. His mood was dysthymic and agitated, his affect was restricted, and his speech was pressured. Following this evaluation, the private psychologist opined that in the last two years, his PTSD symptoms had gotten worse and were causing him increased distress. She stated that his symptoms interfered significantly in all aspects of his life. She concluded that due to the severity and chronicity of his PTSD symptoms, his prognosis for recovery was poor, and that she considered him to be permanently and totally disabled and unemployable. 

In June 2015, the Veteran underwent another VA examination for his PTSD symptoms during which the examiner concluded that he had occupational and social impairment due to mild or transient symptoms, which decreased work efficiency and ability to perform occupational tasks only during periods of significant stress, or his symptoms were controlled by medication. The examiner noted that the Veteran is currently married and that he has two adult children. He has contact with his son twice a week, and has contact with his daughter every one to two weeks. He is also close to his brother and has contact with him approximately two to three times per week. 

During the examination, the Veteran's symptoms were noted as anxiety, chronic sleep impairment, circumstantial, circulatory or stereotyped speech, difficulty in establishing and maintaining effective work and social relationships, and mild memory loss, such as forgetting names, directions, or recent events. The examiner noted that his grooming, hygiene, and eye contact were good. His mood was "OK" and he was cooperative. His affect was broad and congruent to speech content, and his speech was normal in pace, rhythm, and volume. His thought processes were circumstantial, but there were no signs of a thought disorder, delusions, or hallucinations. He was fully oriented to person, place, time, and circumstances.

The examiner noted that he uses poor sleep hygiene habits. The Veteran voiced awareness that when he is more active, he has more energy and he thinks less about Vietnam, but that violence triggers his memories. 

In a September 2015 statement in support of his claim, the Veteran contended that his PTSD symptoms have been severe for the previous seven years, and that he has been unable to work since November 2010 due to these symptoms. He asserted that his signs and symptoms warrant a rating of 70 percent disabling since service connection was awarded and that they warrant a 100 percent rating since November 2010. He reiterated that his private psychologist determined that he has major impairment due to these symptoms in most areas of his life. 

Most recently, the Veteran's private psychologist submitted an October 2015 letter restating her findings from a September 2015 evaluation of him. She assigned a GAF score of 40 for his PTSD symptoms, and she explained that these symptoms continue to disrupt his life. She noted that he sleeps poorly, and that he and his wife have to sleep in separate beds due to his thrashing at night. She noted the lack of sleep contributes to his irritability, and that he reported having additional memory problems. She further noted his problems with staying focused, and that he has to stay busy in order to not think about his combat service in Vietnam; otherwise, he becomes anxious. She stated that he limits his socializing to only family members, and she again reiterated her belief that he is permanently disabled. 

In light of the aforementioned evidence, and after resolving all doubt in the Veteran's favor, the Board finds that his PTSD symptoms have warranted a 70 percent rating for the entire appeal period due to such symptoms as intrusive thoughts, traumatic nightmares, distress, avoidance of conversations about his military service, estrangement and detachment from others, hypervigilance, problems with memory and concentration, exaggerated startle response, chronic sleep impairment, often nonlinear speech, limited insight and judgement, dysthymic and agitated mood, depressed and anxious feelings, and difficulty in establishing and maintaining effective work and social relationships. These symptoms have resulted in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and mood.

In particular, the Board notes that his GAF scores were consistently in the 30s, 40s, and 50s throughout the appeal period on several private and VA evaluations, which indicate that his symptoms caused an inability to function in almost all areas or moderate to serious symptoms. Furthermore, and as will be discussed in more detail below, the Veteran's PTSD symptoms do not allow him to work in a non-protected employment environment and he is required to go at his own pace. Additionally, although the Veteran is married, he stated on numerous occasions that he and his wife cannot sleep together due to his nightmares of Vietnam. Likewise, he has routinely endorsed symptoms of needing to be by himself as that is when he feels most comfortable. Although the Board acknowledges the findings of the November 2009, December 2009, and June 2015 VA examiners that his symptoms appear to correlate with the criteria for a rating of 50 percent disabling, it notes that additional evidence above, including his statements and those of his private psychologist, indicates that these symptoms occur on a daily or weekly basis and that they affect most areas of his life. Thus, his PTSD signs and symptoms warrant a rating of 70 percent for the entire rating period on appeal. 

However, these signs and symptoms do not warrant a 100 percent rating because his symptoms have not resulted in total occupational and social impairment, as shown by his coherent written statements to VA on several occasions. Moreover, the evidence shows that he has been married to his wife for approximately 40 years, that he has relationships with his children and brother, and that he is able to participate in a protected-work environment several times a week. Furthermore, while his GAF scores pursuant to the DSM-IV showed serious or moderate symptoms, or an inability to function in almost all areas due to PTSD, there is no indication that these symptoms amounted to total occupational and social impairment at any point during the appeal. 

Accordingly, after resolving all doubt in the Veteran's favor, the Board concludes that his PTSD has been 70 percent disabling, but not higher, for the entire period on appeal. Thus, his increased rating claim must be granted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

Extraschedular Considerations

The Board has also considered whether referral for one or more "extraschedular" ratings is warranted for the Veteran's PTSD. An extraschedular rating is a rating outside of the regular rating criteria and is permitted if certain factors are present. 

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Id. at 115.

The schedular rating criteria at DC 9411 specifically provide for disability ratings based on a combination of history and clinical findings. In this case, the evidence adequately reflects the symptoms of the Veteran's PTSD include intrusive thoughts, traumatic nightmares, distress, avoidance of conversations about his military service, estrangement and detachment from others, problems with memory and concentration, exaggerated startle response, chronic sleep impairment, often nonlinear speech, limited insight and judgement, dysthymic and agitated mood, hypervigilance, depressed and anxious feelings, and difficulty in establishing and maintaining effective work and social relationships. These symptoms are part of or similar to symptoms listed under the schedular rating criteria. The schedular rating criteria include occupational and social impairment, as indicated by reduced reliability and productivity, and as caused by specific psychiatric symptoms. The schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria. Mauerhan, 16 Vet. App at 442; see 38 C.F.R. § 4.21 (2014). 

Additionally, the Board has considered the Veteran's GAF scores, which were incorporated through the DSM-IV as part of the schedular rating criteria prior to the publication of the DSM-V, as reflective of the degree of severity of psychiatric symptoms or overall functional impairment caused by the acquired psychiatric disability. For these reasons, the Board finds that the schedular rating criteria is adequate to rate his PTSD, and referral for consideration of an extra-schedular evaluation is not warranted.

Moreover, the Board acknowledges that the Veteran is also service-connected for bilateral sensorineural hearing loss and bilateral tinnitus. However, the record as a whole has not indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Nonetheless, the Board has fully considered the additional service-connected disabilities in concluding that referral for consideration on an extraschedular rating is not warranted.

Entitlement to a TDIU

The Veteran also contends that he is unemployable due to his service-connected disabilities. TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

38 C.F.R. § 4.16(a) establishes that the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war.

In reaching a determination of a TDIU, it is necessary that the record reflect some factor which takes the Veteran's case outside the norm with respect to a similar level of disability under the rating schedule. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993); 38 C.F.R. §§ 4.1, 4.15 (2015). The fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether or not the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363. 

Marginal employment shall not be considered substantially gainful employment, and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a).

Indeed, the central inquiry is "whether the veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to a veteran's level of education, special training, and previous work experience, but advancing age and the impairment caused by nonservice-connected disabilities are not for consideration in determining whether such a total disability rating is warranted. See 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose, 4 Vet. App. at 363.

The Veteran is service-connected for PTSD, bilateral hearing loss, and bilateral tinnitus. The Board notes that his combined disability rating meets the percentage threshold set forth in 38 C.F.R. § 4.16(a) for consideration of a TDIU on a schedular basis for the entire time on appeal because the combined rating of these disabilities has been 70 percent disabling after taking into account the Board's granting of an increased rating for the Veteran's PTSD above. Thus, the remaining question is whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 

In his November 2010 application for a TDIU, the Veteran indicated that the highest level of education that he completed was four years of college, and that he had not had any education or training before or after becoming too disabled to work. He reported that the last time he worked in a full-time position was in October 2007 as a GED tutor; however, the Board notes that this employment occurred while he was incarcerated in a penal institution. The last time he worked part-time was in an automobile mechanic shop in November 2010; however, his part-time work that ended in November 2010 was in a protected environment because he worked in his brother's auto mechanic shop. Although this application indicates that he earned approximately 800 dollars per week, the Veteran clarified in subsequent statements that this was in error and he submitted corroborating evidence, such as 2012 IRS tax returns, showing that he does not earn any income. 

The Veteran's private psychologist has noted that his last employment was in the 1970s. Likewise, the Veteran has contended on many occasions that he last worked in the mid-1970s. The Board notes that the Veteran was incarcerated for approximately 17 years from 1990 to 2007. Overall, the record shows that he is not currently employed as his current activities at his brother's auto mechanic shop constitute as marginal employment because they are performed in a protected work environment. 

The record includes conflicting evidence regarding as to whether the Veteran's service-connected disabilities render him unemployable apart from his protected employment at his brother's shop. Specifically, the November 2009 VA examiner did not discuss his employability because he noted that the Veteran was employed at his brother's business. Similarly, while the December 2009 VA examiner noted that the Veteran worked for his brother and that he had difficulty completing projects because it took him twice as long to complete projects as it should be; however, this examiner also did not discuss the possibility of whether the Veteran could work outside of this protected environment. 

Most recently, the June 2015 VA examiner discussed the impact of his PTSD symptoms on his functional impairment, including his ability to work. The examiner determined that the Veteran's symptoms mildly impaired his ability to work cooperatively and effectively with co-workers, supervisors, and the public. Moreover, these symptoms moderately impaired his ability to understand, follow, and retain instructions, and they mildly impaired his ability to communicate effectively in writing and to solve technical or mechanical problems. Similarly, his symptoms had a mild impact on his ability to maintain task persistence and pace, but had a moderate impact on his ability to arrive at work on time and to work a regular schedule without excessive absences. 

In contrast to these VA examination reports are the findings of the Veteran's private psychologist. Beginning in November 2011, she has routinely opined that the Veteran is totally and permanently disabled due to his PTSD symptoms. In fact, in a September 2012 evaluation, she stated that his symptoms cause him to be unemployable. In addition to this private medical professional's opinions, the Veteran has consistently stated that he is unable to work in any sort of non-protected environment because he must work at his own pace and usually apart from people. 

In light of this evidence, and after affording the Veteran the benefit of the doubt, the Board finds that he is unable to secure or follow gainful employment as a result of his service-connected disabilities. Specifically, the Board notes that the record includes numerous medical evaluations that indicate moderate or significant overall impairment due to PTSD symptoms, as shown by GAF scores in the 30s, 40s, and 50s. Moreover, the medical evidence of record is at least in equipoise in showing that his PTSD precludes him from gainful employment, as shown by the private psychologist's opinions. The Board finds it significant that the Veteran has a very limited and short working history due to his incarceration, and that he last worked in a non-protected environment in the 1970s. Although he has a degree from a four-year undergraduate institution, his service-connected symptoms due to hearing loss, tinnitus, and PTSD, as well as his status as a prior felon without a significant work history, prevent him from being able to secure or follow gainful employment. Thus, after affording him the benefit of the doubt, the claim of entitlement to a TDIU must be granted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. Notice letters were sent to the Veteran in May 2011 and November 2012, prior to the adjudication of the claims on appeal. Notices sent to the Veteran included descriptions of what information and evidence must be submitted to substantiate the claims, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claims to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

Moreover, as it pertains to the claim for a higher initial rating, where, as here, service connection has been granted and the initial rating has been assigned, the claim of entitlement to service connection has been more than substantiated, as it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required, since the purpose that the notice was intended to serve has been fulfilled. Furthermore, once a claim for service connection has been substantiated, the filing of a notice of disagreement with the rating of the disability does not trigger additional 38 U.S.C.A. § 5103(a) notice. See Dunlap v. Nicholson, 21 Vet. App. 112 (2007); see also Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). 

VA also has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). 

The Board finds that VA has satisfied its duty to assist by acquiring service records as well as records of VA and private treatment. The duty to assist was further satisfied by VA examinations in November 2009, December 2009, and June 2015, during which examiners conducted examinations of the Veteran, were provided the claims file for review, took down the Veteran's history, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on the Veteran's history and examinations that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining VA examinations or opinions has been met. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). 

Finally, the Board remanded the matters on appeal in August 2012 for additional development, including obtaining outstanding treatment records, scheduling the Veteran for a VA examination, an issuing a supplemental statement of the case (SSOC) if any benefit was denied by the RO. Accordingly, VA associated the outstanding records with the claims file, a VA examiner provided a thorough examination in June 2015, and the RO issued an SSOC in August 2015. The Board notes that the August 2012 remand directives requested that a GAF score be assigned for the Veteran's symptoms during the requested VA examination; however, prior to the completion of the June 2015 VA examination, the new DSM-V was issued, which does not utilize GAF scores to assess mental health disorders. While the June 2015 VA examination report did not include a GAF score because the Veteran was diagnosed using the DSM-V, the Board finds that the examination report contains sufficient information and rationale to adjudicate the Veteran's PTSD claim above. Therefore, the Board finds that there has been substantial compliance with its August 2012 remand directives, and the Board has properly proceeded with the foregoing decision. See Stegall, 11 Vet. App. at 271 (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).

Based on the foregoing, VA has fully met its duties to notify and assist the claimant with the development of the claims and no further notice or assistance is required.



ORDER

Entitlement to an evaluation of 70 percent, but not higher, for PTSD for the entire appeal period is granted, subject to the rules and regulations governing the payment of VA monetary benefits. 

Entitlement to a TDIU is granted, subject to the rules and regulations governing the payment of VA monetary benefits.



____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs